# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| HARDWOOD LUMBER, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:18-05088-CV-RK |
| BREWCO INCORPORATED, | ) |
| Defendant. | ) |

## ORDER ON THE MOTIONS FOR SUMMARY JUDGMENT

Before the Court are several motions for summary judgment. (Docs. 80, 81, 82.) The motions are fully briefed. (Docs. 80-1, 81-1, 82-1, 84, 85, 86, 88, 89, 90.) After careful consideration, Defendant Brewco, Inc.'s motion for summary judgment on all of Plaintiff Hardwood Lumber, Inc.'s claims (Doc. 80) is **GRANTED in part and DENIED in part**. Defendant's motion for summary judgment on its breach of contract counterclaim (Doc. 81.) is **DENIED**. Plaintiff's motion for summary judgment (Doc. 82.) is **GRANTED in part and DENIED in part**.

## Background

This case arises from the sale of a scragg sawmill system (the "sawmill") by Defendant to Plaintiff. The agreement to purchase the sawmill, its various components, and the services Defendant would perform was memorialized in an invoice. Following the initial invoice, additional parts of the sawmill were purchased by Plaintiff, again memorialized in invoices. Together, the invoices constitute a written, binding contract on the parties. Pursuant to the contract, Plaintiffs agreed to pay Defendant a total of $1,673,589.00. To date, Plaintiffs have paid $1,480,000.00, leaving $193,589.00 unpaid.

Prior to purchasing the sawmill, the parties had several discussions and the mill was tested at Defendant's facility. Plaintiff alleges Defendant made several representations about the production capabilities of the sawmill and warranted a certain level of performance. Specifically, Plaintiff alleges Defendant represented or warranted the sawmill would increase the yield of its

lumber production by 22%,[1] the sawmill would increase its lumber production by 133% over the system it was then using, and the sawmill would reduce its labor costs by 18.2% per board foot. Defendant disputes this. After the sawmill was purchased and installed on Plaintiff's property, it failed to produce the pallet lumber yield expected by Plaintiff and the labor costs were higher than expected as well. Defendant attempted, for several months, to resolve issues with the sawmill, but never to a level of Plaintiff's satisfaction. Finally, in March 2019, Plaintiff sold the sawmill to Associated Auction & Liquidation Co., which then sold it to another mill.

Plaintiff filed this action, alleging four counts: (1) breach of warranty of merchantability, (2) breach of warranty for fitness for a particular purpose, (3) negligent misrepresentation, (4) intentional misrepresentation. Defendant asserts counterclaims for breach of contract and unjust enrichment. The parties filed cross motions for summary judgment.

## Legal Standard

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where parties file cross-motions for summary judgment, "each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law." *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 947 (E.D. Mo. 2014). The rule requires summary judgment to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## Discussion[2]

I.  **Defendant's Motion for Summary Judgment on all of Plaintiff's Claims**

    A.  **Defendant's Motion for Summary Judgment on Plaintiff's Misrepresentation Claims (Counts III and IV)**

Defendant first argues Plaintiff's misrepresentation claims are barred by the economic loss doctrine. Under Missouri law, the economic loss doctrine prohibits "a party from seeking to

---

[1] 25,000 board feet per day was what Plaintiff expected and was allegedly represented by Defendant.

[2] The Parties rely on Missouri law, so the Court will do the same.

2

Case 3:18-cv-05088-RK   Document 99   Filed 06/22/20   Page 2 of 8

recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). "A number of Missouri decisions have held that recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Id.* (citing cases). Plaintiff argues the economic loss doctrine does not apply for two reasons: the misrepresentations were independent of the contract and the economic loss doctrine does not bar claims of intentional misrepresentation. Plaintiff's arguments are without merit.

First, Plaintiff argues the misrepresentation claims are independent of the contract. "[T]he economic loss doctrine does not 'categorically' bar fraud and misrepresentation claims that arise in cases involving contractual relationships." *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014) (applying Missouri law). "[M]ost courts have allowed tort claims to go forward where they are based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement." *Id.* (citation and quotation omitted). Two factors determine whether a representation is independent: (1) "whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract;" and (2) "whether the plaintiff suffered additional damages outside the contract." *Id.* at 903-04. On the first factor, courts ask "whether a contract term conflicts with or contains the alleged misrepresentation." *Id.* at 904. "It is not enough . . . for the subject matter of the misrepresentation to merely be referenced in the parties' contract." *Id.*

Plaintiff's claims are not independent of the contract. The primary case cited by Plaintiff, *Superior Edge*, discusses a common example of a claim that is independent of a contract claim: fraudulent inducment. *Id.* But Plaintiff pleads no fraudulent inducement claim. *See Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014) (fraudulent inducement is distinct from fraudulent or intentional misrepresentation). Instead, Plaintiff's claims for misrepresentation and breach of warranty claims arise out of the same allegations, namely that the sawmill did not produce the amount of lumber, required more labor, and had lower yields than represented. Plaintiff's claims center around the quality and character of the sawmill delivered. Such claims are barred by the economic loss doctrine. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000) ("where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the economic loss doctrine bars the fraud claims because the fraud claims are substantially redundant with warranty claims.") (quotation and citation omitted). In

3

addition, Plaintiff's alleged damages resulting from Defendant's purported misrepresentations are the same as its contract damages. As such, the Court cannot say Plaintiff suffered additional damages independent of the contract. Thus, the misrepresentation claims were not independent of the contract.

Second, Plaintiff argues the economic loss doctrine does not apply to intentional misrepresentation claims, citing *Murphy v. Northwest. Mutual. Insurance. Co.*, No. 03-0864CV-W-HFS, 2005 WL 1421789, at *2 (W.D. Mo. June 13, 2005). However, several other courts since have limited this exception to fraud claims independent of the contract. *OS33 v. CenturyLink Commc'ns, L.L.C.*, 350 F. Supp. 3d 807, 816–17 (E.D. Mo. 2018) (Finding a fraud claim failed because "the substance of OS33's fraud claim is for the recovery of economic losses that arise solely out of CenturyLink's alleged breach of the parties' Agreement."). *Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928, 933 (E.D. Mo. 2014) ("A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement."); *Trademark Med., LLC v. Birchwood Labs, Inc.*, 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014).

As discussed above, Plaintiff's misrepresentation claims are not independent of the contract in this case. Therefore, the economic loss doctrine bars Plaintiff's misrepresentation claims. Therefore, Defendant's motion for summary judgment will be granted on Counts III and IV of Plaintiff's complaint. Because the economic loss doctrine precludes the misrepresentation claims, the Court need not address Defendant's arguments that the representations were mere opinion or puffery, were broad and ambiguous, or that the elements of misrepresentation cannot be proven.

### B. Defendant's Motion for Summary Judgment on Plaintiff's Breach of Warranty of Merchantability Claim (Count I)

Defendant claims it is entitled to summary judgment on Plaintiff's breach of warranty of merchantability claim because the claim is really a misrepresentation claim or a warranty of future performance, and the sawmill was merchantable. The Court will address each argument in turn.

Defendant argues Plaintiff's reliance on alleged representations about the sawmill's performance transforms Plaintiff's merchantability claim into a misrepresentation or warranty of future performance claim. Defendant's argument is without merit. "The implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality*". *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) (emphasis in original); *see also Davis v. Dunham's Athleisure Corp.*, 362 F. Supp. 3d 651, 663 (E.D. Mo. 2019). Plaintiff provides evidence that the

sawmill produced less than expected, had bottlenecks and repeated start-stops, and had defective transitions and inadequate spacing. (Doc. 82-1, ¶¶ 97-100, 110-11; Doc. 85, ¶ 144.) Even though Defendant correctly points out the sawmill did in fact mill scrag logs, the problems with the sawmill and level of production creates an issue of fact as to whether the sawmill satisfied a minimum level of quality. *Hope*, 353 S.W.3d at 90.

Next, Defendant argues the sawmill was in fact merchantable. Defendant argues the mill was installed in the layout requested and produced cutstock pallet lumber from scrag logs. However, for the reasons set forth above, and as demonstrated in the briefing, genuine issues of fact exist as to whether the sawmill was merchantable. Therefore, Defendant's motion for summary judgment will be denied on this point.

### C. Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim

Plaintiff's claim for punitive damages is based on its claims for misrepresentation. Because the Court will grant summary judgment in favor of Defendant on those claims, Plaintiff has no basis to allege punitive damages. *Trademark Med., LLC*, 22 F. Supp. 3d at 1004 (E.D. Mo. 2014) (no claim for punitive damages under breach of warranty). Therefore, the Court will grant Defendant's motion for summary judgment on Plaintiff's punitive damages claim.

## II. Cross Motions for Summary Judgment on Plaintiff's Breach of Warranty of Fitness for a Particular Purpose (Count II)

Both parties believe they are entitled to summary judgment on Plaintiff's fitness for a particular purpose claim. The arguments are without merit.

"[A]n implied warranty of fitness for a particular purpose . . . applies '[w]here the seller at the time of contracting has reason to know of any particular purpose for which the goods are required and . . . the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.'" *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130 (Mo. banc. 2010) (citing Mo. Rev. Stat. § 400.2-315.) "A breach of the implied warranty of fitness for a particular purpose may not be established without substantial evidence that the article or product was bought for a purpose that was special or 'particular' to the buyer and distinct from the article's or product's ordinary purpose." *Doe v. Miles, Inc.*, No. ED75100, 2000 WL 667383, at *7 (Mo. Ct. App. May 23, 2000).

The relevant and disputed issue presented on summary judgment is whether the sawmill was bought for a particular purpose. Defendant argues the sawmill was bought for an ordinary purpose, namely to mill scrag logs. Plaintiff, on the other hand, argues the sawmill was a complex, customized set of equipment designed for a specific purpose. The parties arguments alone demonstrate a genuine issue of material fact. Therefore, the Court will deny Plaintiff's and Defendant's summary judgment motions on Plaintiff's claim for breach of warranty for fitness for a particular purpose

**III.     Defendant's Motion for Summary Judgment on its Breach of Contract Counterclaim**

In its counterclaim, Defendant alleges Plaintiff breached the contract by withholding payment to Defendant in the amount of $193,589.00. To establish a breach of contract claim under Missouri law, a party must prove four things: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of contract by the defendant; (4) damages suffered by plaintiff. *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. App. 1997). Plaintiff argues it was justified in withholding payment because the term "installation" and/or "install" is ambiguous, Defendant failed to perform in accordance with the contract, and it is entitled to withhold the payment as a deduction from damages Defendant owes Plaintiff.

First, Plaintiff argues the terms "installation" and/or "install" are ambiguous and can reasonably be interpreted to mean installation to Plaintiff's satisfaction. This argument is without merit. On the same page of the contract, "installation" is defined as: "Three men for ten days. Our men to set the system in place, hook up all the hoses, connections, fittings. Weld components together where necessary and bolt system to the floor. Test Transitions, NO Control wiring provided." (Doc. 81-2.) Plaintiff admitted Defendant began installation on December 7, 2017 and finished on December 30, 2017. (Doc. 85, ¶ 52.) Plaintiff points to several extraneous communications to support its argument that an ambiguity exists. Parol evidence, however, cannot be used "to vary, contradict, modify, enlarge, or curtail the terms of an agreement that on its face is free from ambiguity." *Harris v. Union Elec. Co.*, 622, S.W.2d 239, 247 (Mo. App. 1981). Because the terms "installation" and/or "install" are not on its face ambiguous, the Court will not consider the extraneous communications between the parties on this point. Therefore, the terms "installation" and/or "install" are not ambiguous as Plaintiff argues.

6

Second, Plaintiff argues Defendant did not satisfy its obligations under the contract.  A seller, "in seeking to recover, must prove that it had performed in accordance with the terms of the contract." *S. G. Adams Printing & Stationery Co. v. Cent. Hardware Co.*, 572 S.W.2d 625, 629 (Mo. App. 1978).  However, "[o]nce a buyer accepts a tender, the seller acquires a right to its price on the contract terms." *Chancellor Dev. Co. v. Brand*, 896 S.W.2d 672, 675–76 (Mo. Ct. App. 1995).  "A buyer's actions which are inconsistent with seller's ownership are many and varied and include making payments, taking possession of the goods, use of the goods, repairing, working on them, attempts to resell them, and dealing with them in other varied ways." *Id.* (internal quotations and citation omitted).  Here, Plaintiff used the sawmill for several months, and then sold the sawmill to a third party.  Such actions are inconsistent with rejection and indicates Plaintiff accepted the sawmill. *Id*.

However, the contract was a mixed contract – that is one for services and goods.  In the contract, there is a section called "ON-SITE INSTALLATION & TRAINING."  (Doc. 81-2.)  Within that section, there is a line titled "START-UP."  (*Id.*)  That section reads "Start up the system, ensure running properly, fine-tune and adjust system."  (*Id.*)  What the phrase "ensure running properly" means and required of Defendant are factual issues, disputed by the parties.  Further, while the contract itemizes the various goods and services, there is evidence the contract may have been modified after the initial invoice.  How the contract apportioned the cost for the sawmill and for the services is unclear.  Thus, genuine issues of fact exist as to whether Defendant performed services in accordance with the contract terms and what, if any, amount is still owed by Plaintiff to Defendant.  Finally, any amount owed by Plaintiff may be offset by damages Defendant may owe on Plaintiff's breach of warranty claims.  Therefore, Defendant's motion for summary judgment on this point will be denied.

IV. **Plaintiff's Motion for Summary Judgment on Defendant's Unjust Enrichment Counterclaim**

Defendant concedes its unjust enrichment claim should be dismissed because there is a binding, written contract between the parties.  As such, the Court will grant Plaintiff's motion for summary judgment on this counterclaim.

## V. Plaintiff's Motion for Summary Judgment on its Breach of Warranty for Fitness of a Particular Purpose

Plaintiff's motion is denied on this matter for the reasons set forth in Section II. There is a genuine issue of material fact as to whether the sawmill was bought for a particular purpose.

## Conclusion

Accordingly, and after careful consideration, it is therefore **ORDERED** as follows:

1. Defendant's motion for summary judgment on all of Plaintiff's claims (Doc. 80) is **GRANTED in part and DENIED in part**. Specifically, Defendant's motion is granted with regards to Plaintiff's misrepresentation claims, but is denied as to Plaintiff's breach of warranty claims.

2. Defendant's motion for summary judgment on its breach of contract counterclaim (Doc. 81) is **DENIED**.

3. Plaintiff's motion for summary judgment on Defendant's unjust enrichment counterclaim and its breach of warranty for fitness of a particular purpose claim (Doc. 82) is **GRANTED in part and DENIED in part**. Specifically, Plaintiff's motion for summary judgment on Defendant's unjust enrichment counterclaim is granted, but its motion for summary judgment on the fitness for a particular purpose claim is denied.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 22, 2020